Federal Defender's Office on behalf of Mr. Ambris. Zahavia's appeal where the sole question that's been certified is whether the prosecutor's remarks in his closing, where he started his closing with calling Mr. Ambris a career criminal, so infected the process that it violated his due process rights. There's clearly established Supreme Court precedent that talks about this, that established that high standard that he has to meet in Darden and De Cristofero. The criteria that those two decisions and other ones, but those two from the Supreme Court that they look at, the kind of standards that they look at, is to try to determine what happened in the context of this trial. And if you take a look at what the prosecutor's actions are in the context of what happened even pretrial, I think it's very illicit that this is a prosecutor who has made a conscious decision to use those offensive terms, that career criminal, deliberately. If you look at But didn't all of it come out of the evidence in the case and the testimony of the officers concerning the sneaks and the footprints in the ground and the things they found in his apartment or his home, that all of these things led to the fact that this was not an individual burglary, the catalog, the listing of prices that a person, you know, would have to pay for these items and all. So it isn't as if this man is just accused of a couple of burglaries and somebody calls him a career criminal. There was evidence of a commonality between the 20. There are 20 different counts. Some of them repeat. But there are over 15 separate things taken. Many of them are the same victims. But there are at least a half a dozen victims. I didn't recount the heads. But you're right. There's a series of crimes that are taking place in the rural community. Quantities of expensive items are taken. And they're finding a pattern of finding these converse sneakers there, which they then find under Mr. Ambrose's bed. How many pairs of sneakers under his bed? Seven. Seven. But And so who brings up the whole question of shoes and professional criminals? Mr. Ambrose's lawyer. He does, but there is He's the one that brought it up and started talking about professional criminals and all the rest of that kind of stuff. He brought it up in the context of trying to get the officer who's trying to be, he's being an expert in identifying these footprints that they've taken photographs of to tie them to the tennis shoes that are in Mr. Ambrose's bed. And what he's trying to show is, look, these are just converse tennis shoes. How many thousands of pairs of converse tennis shoes? Is there something unique about Mr. Ambrose's set of converse tennis shoes that make it different? And then the officer says, yeah, when I see things like this, I think of people who are kind of professional criminals. So then that's the testimony. So then he asked him another question. And then the officer does it again. He says, well, you know, I see this kind of thing and what I think of because of my experience as I think of these career professional criminals, because they do this sort of shoe switch deal. But Mr. Ambrose's lawyer never says, okay, I'm going to move to strike that because he's kind of straying into testimony on career criminals. That stays in the record. It does. Let me ask my question. Go ahead. My question then is, with that in the record, plus the other testimony, how is it possible to say there's not a factual basis for the prosecutor's argument? Because if you look at exactly what officer, and I'm not going to even try to quote. Schwabeland. Thank you. I'm not even going to try. Schwabeland. His testimony is that it is his experience from investigating crimes like this where there's a series that the people who are involved will deliberately change shoes in order to throw off the forensics. Okay. There was no testimony that he knows that about Mr. Ambrose. And so there's no factual connection between Mr. Ambrose in that statement. And that's how the State Court of Appeals, in my judgment, misapplied, made an unreasonable factual connection. They misread his testimony to tie it directly to Mr. Ambrose. Mr. Ambrose has Converse 10 issues. There's no dispute about that. And therefore, there also is no – there wasn't a sufficiency of the evidence question presented in habeas, because, yes, he had Converse 10 issues. Yes, there's Converse 10 issues that are found at the scene. So there is a circumstantial connection between them. And there are other things that are found in the apartment that is a circumstantial connection between them. The damaging part that I would like you to look at from the prosecutor's comment is that he tried repeatedly pretrial to be able to bring out Mr. Ambrose's priors. He wanted originally to read the complete complaint, including the 33 aliases. There was also one charge of misdemeanor giving a false identity police officer that was discussed pretrial, where he wanted to bring out all these other arrests and things in order to paint this picture that this guy has been doing this for years and years and years. And the judge said, well, wait a minute. We're going to run into problems. And the defense specifically objected and said, well, what if we discuss pleading guilty to the misdemeanor identification so we avoid this prejudicial display of all these, you know, indirectly bringing in all these prior arrests and these prior – the two particular prior convictions? But the point is they were kept out. I don't know where you're going. They were kept out. Right. So my point is that the prosecutor knew that they were kept out, knew that he wasn't supposed to talk about them, and yet in the most scripted part of a closing argument, the very first portion, he deliberately says career criminal. Yes, but don't we look at what he did rather than why he did it? Well, I think you – I mean, he didn't get to do what he wanted to do, but he did the best he could with the evidence that was in the case. And it was part of the story. Well, I don't – there was no factual evidence that Mr. Ambrose – this is a point. It's a very narrow – it's a very specific point. I realize that. But there was no factual evidence that he was a career in crime. No, but here's what the state court said, which I thought – which I was focusing on. It says, The testimony describes a career professional criminal as one who engages in a series of crimes against multiple victims. In this context, the prosecutor's reference is founded on testimony regarding the type of criminal pattern rather than utilized as an inference of defendant's prior criminal record. What is wrong with that either as a matter of fact or law? As an abstract point of testimony, I think there's nothing wrong with it, and I think that's why the defense didn't object to it. No, no. This is the state court decision. Right. But I think – Interpreting the detective's evidence and then the prosecutor's reference to the evidence. I think that if the prosecutor had said, whoever committed this offense is a professional thief, which was an expression he used, that it's something that's ongoing. It's not something that he just took randomly. It's something that's planned out. I think that would have been a permissible inference. It's okay to say these crimes were committed by a professional thief, but then you can't say, guess who committed them? I think – well, there is a difference in – I have a sixth pair of tennis shoes, bolt cutters, and all these other paraphernalia charged with umpteen zillion counts. Right. And there are other people that use that apartment, who lived in that apartment, and that's where the bolt cutters – there were circumstantial evidence that pointed to other people, and that's what the defense case was about, is that this evidence points to lots of other people, and it's not just me. And so he's presenting a reasonable doubt defense. He chose – and this is part of the problem. The prosecutor doesn't have to argue his case, meaning the defendant's case. No, he doesn't. There was no problem with the prosecutor. I don't think there was anything, aside from the forays that were objected to and instructed about the burdens – I didn't see anything else in the prosecutor's argument that was a problem. The start-out with career criminal, though, is signaling to the jury that the prosecutor knows that this man has prior convictions, as opposed to – No, that's the issue. If the record established that, you'd be right, because you're not allowed to bring in that kind of stuff. But here the record establishes to the contrary. I mean, there's all kinds of evidence in the case of career criminality and unprofessional criminality, and you've got to show intent. It's a standard problem in these cases. Our position is that there is a distinction, especially in California in a post-three-strikes world that the jury was very aware of, that when you say career criminal out of a prosecutor's mouth, that you're signaling to the jury that he knows about his prior convictions in a way that the jury did not hear that evidence. You have a State court opinion saying that didn't happen in this case. Well, I think it's a misunderstanding. So you're saying that a career criminal could not be someone who was never arrested or convicted before. He could have been just lucky and committed 300 burglaries and finally gets caught, and the prosecutor said these burglaries are the work of a career criminal, and somehow or other this suggests to the jury that he's been arrested and convicted before. Yes. Okay. Do we have a minute left? That has to be our argument. You have a minute left. Why don't you save it? I'll save it. Thank you. We'll let you respond. Good morning, Your Honors. David Andrew Eldridge, Deputy Attorney General for Respondent Pelley. I don't have any Excuse me. What's that noise? That's okay. Go ahead. Sorry. I don't have any independent points that I'm trying to make. I'm happy to answer any questions. Well, what about the point that in California now the term career criminal has taken on special significance? The public has been saturated with that. It's sort of a trigger word. And whenever anybody in law enforcement says career criminal, your ordinary citizen thinks three strikes and you're out. This is a really bad person, and that's why he's here. What about that? I'm unaware of any factual basis for that assertion. That's a good answer. With that, thank you. Thank you, Counsel. You can respond to that. I'll submit it. Thank you, Your Honors. Thank you both. The case to start is ordered submitted. We move on to the next case on the calendar, which is Cook v. Scribner.
judges: Meskill, Trott, McKeown